IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ILLA WAHPEKECHE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-14-83-L |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
|   Acting Commissioner of Social | ) | |
|   Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Administrative History and Medical Evidence

On February 21, 2012, Plaintiff filed an application for Title II disability insurance benefits. Plaintiff alleged that she was disabled beginning June 1, 2010, due to the residual effects of back surgery and arthritis in her back. (TR 130, 160). Plaintiff has a high school education and previous work as a PBX operator, kitchen helper, driver, general laborer, and

1

nursing aide. (TR 160, 184).

The medical record shows that Plaintiff injured her back while at work on May 24, 2007. She continued to work at her full-time position as a cashier. She was referred by her employer's workers compensation insurance carrier to Dr. James Odor, an orthopedic surgeon, and Dr. Odor examined Plaintiff on March 10, 2008. She reported that since her injury she had undergone three lumbar injections and that the injections helped temporarily but she continued to have pain in her lower back radiating into both lower extremities and neck pain radiating into both upper extremities and shoulders. (TR 247). Dr. Odor noted that Plaintiff exhibited limited range of motion in her cervical and lumbar spines, full muscle strength, and intact sensation. (TR 248).

Plaintiff subsequently underwent conservative treatment measures, including three epidural steroid injections, physical therapy, and medications, to treat her cervical and lumbar degenerative disk disease, and she was advised to continue working at her cashier position. (TR 240, 249). In July 2008, Dr. Odor released Plaintiff from further treatment, advised the insurance carrier that she was not a candidate for surgery due to her weight, and imposed on Plaintiff a 25-pound repetitive weight lifting restriction. (TR 240).

In March 2010, Plaintiff sought further treatment from Dr. Odor. Plaintiff stated she was working as a PBX operator and taking medications but she had fallen asleep at work due to the effects of her medications. She complained of increasing lower back pain with radiation down both hips and legs, worse with standing and walking, and constant neck pain with radiation into both shoulders and arms. (TR 292). Dr. Odor prescribed pain, muscle

relaxant, and anti-inflammatory medications. Plaintiff underwent MRI testing of her lumbar spine and a new series of injections which she reported did not provide lasting pain relief. (TR 281). A lumbar discogram was conducted, and Dr. Odor noted the discogram revealed three-level, significant spinal stenosis for which he recommended a lumbar laminectomy and foraminotomy operation. (TR 275).

The recommended surgical procedure was performed on Plaintiff by Dr. Odor on December 8, 2010. (TR 270-271). One month later, Dr. Odor noted Plaintiff was "doing very well," and in a subsequent examination he noted she continued to improve. (TR 266, 268). Dr. Odor recommended a functional capacities evaluation be conducted to help determine Plaintiff's functional ability following the operation. (TR 266). The functional capacity evaluation indicated Plaintiff was capable of performing light work, and in March 2011, only three months after her operation, Dr. Odor released Plaintiff from further treatment with a restriction for light work. (TR 263).

In a consultative physical examination conducted by Dr. Godlewski in April 2012, Plaintiff reported that the previous back surgery "improved her cramping-style radicular symptoms, but she has had continuous throbbing back pain ever since" without radicular symptoms. (TR 360). She reported she could not sit or stand for long periods, she had difficulty stooping, and her back locked up from time to time. The physician noted that in a physical examination Plaintiff appeared "morbidly obese," she walked slowly but with no limp or antalgic gait, and she exhibited diffuse tenderness in her lumbar and cervical spines, no neurological deficits, no radicular symptoms, limited knee flexion, limited hip flexion and

3

abduction, and an otherwise normal exam. (TR 360-361).

Plaintiff was treated at a mental health crisis center in May 2012 after she reported she had attempted suicide by overdose with alcohol and Xanax®, and she was diagnosed with unspecified depressive disorder and alcohol abuse. (TR 383, 386, 387). She reported she was not taking any medications. (TR 387). She was prescribed anti-depressant medication and discharged the following day with an improved mental status. (TR 384). Although Plaintiff was advised to seek follow-up treatment at a mental health clinic, there is no evidence that Plaintiff sought further mental health treatment.

Between October 2009 and June 2013, Plaintiff was treated at a tribal health clinic for various minor medical conditions, including left foot swelling, insect bites, asthma, bronchitis, and seasonal allergies, and she was occasionally treated with medications for back pain. In May 2013, her treating clinic examiner noted Plaintiff complained of neck pain with right upper extremity pain for the previous "few months." (TR 430). The examiner noted that Plaintiff had not had a routine check-up since 2011 and "over the course of the past year has had multiple no shows and cancellations." (TR 430). She was taking medication for weight loss, and she was prescribed medications for cervicalgia, neuralgia, elevated blood pressure, chronic back pain, right shoulder pain, and asthma. (TR 433).

In July 2013, Plaintiff sought treatment at a different tribal health clinic and reported she was taking only Lortab® prescribed by her treating tribal health clinic. (TR 445). She complained of pain in her lower back radiating down both legs and into her left foot. She reported injuring her back several years before by "lifting stove" and previous back surgery.

4

(TR 445). An examination revealed low back tenderness, obesity, and a normal gait. (TR 446). Plaintiff received a pain medication injection and anti-inflammatory medication, and she was discharged. (TR 446-447). The examiner noted Plaintiff had just filled a prescription for Lortab® on July 1, 2013. (TR 447).

At a hearing conducted on August 1, 2013, before Administrative Law Judge Levine ("ALJ"), a medical expert ("ME") testified that Plaintiff's degenerative disk disease in her lumbar spine, chronic neck pain, and obesity impairments did not meet or medically equal the requirements for a listing. (TR 38). In the ME's opinion, Plaintiff was capable of lifting 20 pounds occasionally, 10 pounds frequently, walking two hours in a six-hour period, sitting six hours in a six-hour period, occasionally performing postural movements, never crawling, frequent overhead reaching, and no work around ladders, unprotected heights, scaffolding, ropes, fumes, or chemicals. (TR 38). The ME opined it was "best to have her at least be given a break every hour to change position briefly; stand or sit, so to that extent . . . she could have a sit/stand option." (TR 39).

A vocational expert ("VE") testified in response to hypothetical questioning. The ALJ posed a hypothetical inquiry as to the availability of jobs for an individual with Plaintiff's age, education, and work experience and the residual functional capacity ("RFC") for work at the light exertional level with standing and walking limited to one hour at a time, and sitting limited to one hour at a time "with allowing [the individual] to change position at the work station without taking a break." (TR 50). The individual could never climb ladders, ropes, scaffolds, or crawl, could occasionally balance, stoop, kneel, or crouch, could

frequently reach, and should avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, unprotected heights, and dangerous moving machinery. (TR 50-51). In response, the VE testified that such an individual could perform Plaintiff's previous job as a PBX operator. (TR 51). The VE further testified that some sedentary jobs were available for the individual, including the jobs of telephone operator and answering service operator. (TR 55).

II. ALJ's Decision

In a decision entered September 30, 2013, the ALJ found at step one of the required sequential evaluation procedure, see Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(explaining five-step evaluation)(quotations and citations omitted), that Plaintiff had not worked since June 1, 2010, her alleged disability onset date. (TR 12). At step two, the ALJ found that Plaintiff had severe impairments due to degenerative disk and joint disease, obesity, and asthma. (TR 12). At step three, the ALJ found that Plaintiff's impairments, considered singly or in combination, did not meet or medically equal the requirements of a listed impairment. At the fourth step, the ALJ found that Plaintiff had the RFC to perform light work except that she could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk 2 hours out of an 8-hour workday, sit 6 hours out of an 8-hour workday, stand or walk a maximum of 1 hour at a time, sit a maximum of 1 hour at a time, would need to change positions at a workstation and stand without breaks, could not climb ladders, ropes, or scaffolds or crawl, could occasionally climb stairs, balance, stoop, kneel, or crouch, and frequently reach, and must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, unprotected heights, and dangerous machinery. (TR 17).

6

Relying on the VE's testimony, the ALJ found at step four that Plaintiff was capable of performing her past work as a PBX operator and she was therefore not disabled within the meaning of the Social Security Act. (TR 21).

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 404.981; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

III. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The ALJ determined at step four of the well-established sequential evaluation procedure that Plaintiff was not disabled within the meaning of the Social Security Act. At the fourth step of the evaluation process, the ALJ must determine whether the claimant

retains the RFC to perform the requirements of all past relevant work. RFC represents "the most [that the claimant] can still do despite [his or her] limitations." 20 C.F.R. §404.1545(a)(1). The claimant bears the burden of proving an inability to perform the duties of all past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993).

IV. Credibility

Plaintiff contends that the ALJ erred in evaluating her credibility and that substantial evidence does not support the credibility finding. The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about [her] symptom(s) and [their] functional effects." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 1 (1996). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). An ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements" in determining a claimant's credibility. SSR 96-7p, 1996 WL 374186, at * 4 (1996). Credibility findings must also "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

An ALJ is not, however, required to conduct a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Employing

8

"common sense" as a guide, the ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility." Id.; Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012).

The ALJ determined that Plaintiff's allegations of disabling pain and limitations were not credible. The ALJ provided specific reasons for this credibility finding. (TR 19-20). The ALJ discussed the objective medical evidence and found it was inconsistent with her allegations, stating:

> She had a laminectomy on December 8, 2010. On March 3, 2011, Dr. Odor released her to perform light duty work, which was less than one year after her alleged onset date. Medical documentation on April 2, 2012, indicated that the claimant was in no acute distress. She walked slowly with no limp, no antalgic gait, no foot drop, and she was alert and oriented times three. She was obese. She had a negative seated and lying straight leg raise [test], but this maneuver did cause her pain in her lumbar spine and she had a lot of hamstring tightness, but had no radicular symptoms. She had normal neurologic examination [at] C5 to T1 [spinal levels] bilaterally.

(TR 19). See Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991)(listing factors relevant in assessing credibility of claimant's allegations of disabling pain, including "the consistency or compatibility of nonmedical testimony with objective medical evidence").

The ALJ also considered the frequency and effectiveness of her medical treatment, noting that she "did not seek any further orthopedic specialty care nor did she seek any mental health care treatment. She sought only minimal medical treatment through Indian Health Clinics and had a one-day intervention at Oklahoma County Crisis Intervention Center to regulate medications." (TR 19). Id. ("the levels of medication and their

9

effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, [and] the frequency of medical contacts" are factors that should be considered in determining credibility of claimant's pain complaints).

The ALJ further considered other reasons for discounting her credibility, including inconsistencies between her statements regarding her alcohol and drug use and notations in the medical record, as well as indications in the medical record that she was "possibly drug seeking requesting Lortab for back pain." (TR 19)(citing Exhibits 6F and 12F).

The ALJ also considered Plaintiff's daily activities and found that

> she has described daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. She takes care of her own personal needs with some difficulty bending. She prepares herself three meals a day. She performs household chores including doing dishes and light loads of laundry daily. She can walk ½ a block. She goes outside three times a day. She rides in a car. She shops for groceries once a month. She manages her own finances. She watches television. She chats on the telephone three times daily and goes to visit her sister once a month.

(TR 19-20).

Finally, the ALJ considered the opinions of her treating physician and the agency's medical consultants. The ALJ noted that Dr. Odor's opinion was that Plaintiff was capable of performing light work beginning in March 2011, and he had released Plaintiff for light work. The ALJ gave great weight to this opinion "because he had an established treatment relationship with the claimant and his opinion is based on his observations and objective testing, including surgical intervention." (TR 20). Finally, the ALJ gave great weight to the

10

opinions of the agency's medical consultants and found that these opinions were consistent with the medical evidence in the record. (TR 20).

One of these consultants, Dr. Ligon, opined in April 2012 that Plaintiff retained the RFC to perform light work with frequent to occasional climbing, balancing, kneeling, crouching, stooping, and crawling. (TR 374-381). Another consultant, Dr. Lancaster, opined in August 2012 that Plaintiff retained the RFC to perform light work with frequent to occasional postural movements. (TR 422-429). The ALJ's RFC finding with respect to the sit-stand limitation imposed in the RFC is consistent with and supported by the opinion of the ME.

Plaintiff points to one statement in the ALJ's decision that "[t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (TR 18-19). Plaintiff complains that with this statement "the ALJ apparently judged the credibility of the claimant's testimony by comparing it to a pre-determined RFC." Plaintiff's Opening Brief, at 9. This same argument has been rejected where, as here, there was no indication that the ALJ did not factor in Plaintiff's credibility in making the RFC determination. See Jimison ex rel. Sims v. Colvin, 513 Fed. App'x. 789, 796 (10th Cir. 2013)(unpublished op.).

Plaintiff insists that Plaintiff be determined credible because no medical professional ever concluded she was exaggerating her pain complaints and her doctors prescribed "powerful narcotics" to treat her pain. However, even though it is clear from the record that Plaintiff was prescribed narcotic pain medication, "'disability' requires more than the mere

11

inability to work without pain." Wall v. Astrue, 561 F.3d 1048, 1068 (10th Cir. 2009)(internal quotations and citation omitted). The ALJ discussed several relevant credibility factors in assessing Plaintiff's pain, including her medications. "[T]he fact that she took pain medication does not mean she was disabled." Moua v. Colvin, 541 Fed. App'x. 794, 800 (10th Cir. 2013)(unpublished op.). The ALJ also properly considered Plaintiff's treating physician's and the agency medical consultants' assessment of the severity of Plaintiff's pain-producing back and neck impairment, none of whom found Plaintiff was disabled.

Contrary to Plaintiff's argument that the ALJ relied solely on "boilerplate" language, the ALJ provided specific reasons that are well supported by the record for discounting the credibility of Plaintiff's disabling pain complaints. Further, no error occurred in the ALJ's evaluation of the evidence with respect to the step four credibility determination.

V. Sit/Stand Option

Plaintiff contends that the ALJ's RFC finding is inadequate because it does not identify the frequency of Plaintiff's need to alternate between the sitting position and the standing position. The ALJ determined that Plaintiff's RFC for light work was limited with respect to her ability to sit and stand at work. Specifically, the ALJ found that Plaintiff "could stand/walk a maximum of 1 hour at a time, sit a maximum of 1 hour at a time, and would need to change positions at workstation and stand without breaks." (TR 17). Plaintiff concedes that considering these findings in combination the ALJ's alternate sitting and standing findings are adequate.

But Plaintiff then argues that "the ALJ never identifies the length of time necessary

for each position." Plaintiff's Opening Brief, at 11. The ALJ was not required to provide greater clarity in the RFC finding. Employing a common sense analysis of the decision, the ALJ clearly stated that the Plaintiff would need to alternate positions between standing/walking and sitting at least once every hour. Because the ALJ's RFC finding included a sit/stand option and postural limitations, the ALJ effectively found that Plaintiff was limited to less than a full range of light work. As a consequence of this RFC finding for less than a full range of light work, the ALJ properly elicited vocational testimony concerning the Plaintiff's ability to perform both the demands of her past relevant work and other work available in the economy. The RFC description provided to the VE included the relevant limitations ascribed to Plaintiff. The ALJ specifically stated that the hypothetical person who "has been standing for an hour then will [need to] sit down but they can do it at the work station, not having to take a full break" from working. (TR 50). The VE testified that with these limitations Plaintiff could perform her previous job as a PBX operator and also testified that alternating positions between sitting and standing/walking on "an hourly basis [was] probably not going to interrupt [her] work." (TR 56). Therefore, the record provides substantial evidence to support the ALJ's step four determination.[1]

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter

---

[1]Plaintiff's argument that "there is an apparent unresolved conflict between the VE evidence and the DOT" is without merit as it is wholly unsupported by the record. Plaintiff's argument that the ALJ should have included an "at will" clarification for the sit/stand option in the RFC finding is without merit as it is unsupported by the record or legal authority.

AFFIRMIMG the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before       January 26th , 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this    6th    day of         January, 2015.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE